Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9245 | **DATE** | May 9, 2003 |
| **CASE TITLE** | PACTIV CORP vs. MENASHA CORP et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment as to count I of the amended complaint is granted. As to the remaining counts, all previously set dates shall stand.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | MAY 1 2 2003 date docketed | |
| | Docketing to mail notices. | | | 64 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | JS6 | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PACTIV CORPORATION<br>An Illinois corporation<br><br>Plaintiff,<br><br>v.<br><br>MENASHA CORPORATION, a Wisconsin corporation, MENASHA PACKAGING CORPORATION, LLC, a Wisconsin corporation and BILL BAUMGARTNER<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 02 C 9245<br><br><br><br>DOCKETED<br><br>MAY 1 2 2003 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On March 12, 2003, plaintiff Pactiv Corporation ("Pactiv") filed its three count amended complaint against defendants Menasha Corporation, Menasha Packaging Corporation, LLC (collectively, "Menasha") and Bill Baumgartner ("Baumgartner"). Count I alleges a breach of a contact claim against Menasha for hiring Baumgartner in violation of a confidentiality agreement between Pactiv and Menasha dated April 6, 2000. Count II seeks injunctive relief and damages against Baumgartner individually and arising from an alleged breach of a December 1996 confidentiality agreement between Baumgartner and Pactiv or its predecessor. Count III seeks injunctive relief and damages for the inevitable disclosure of trade secrets by Baumgartner and other former Pactiv employees hired by Menasha. Menasha filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 as to count I of the amended complaint. For the

1

64

following reasons, Menasha's motion is granted.

## STATEMENT OF FACTS

In April and May 2000, Menasha considered purchasing Pactiv's Glacier-Cor ("Glacier-Cor") business, a wholly owned subsidiary of Pactiv. Before Pactiv would provide Menasha with financial information regarding and access to Glacier-Cor to aid in Menasha's review of Glacier-Cor, Pactiv drafted a confidentiality agreement dated April 6, 2000 ("Agreement"), restricting Menasha's ability to use information received and to solicit or hire certain Pactiv employees for three years. The Agreement prohibited Menasha from, *inter alia*: (1) using the confidential information about or access to Glacier-Cor, obtained as part of its review of Glacier-Cor, for purposes other than evaluating the purchase; and (2) hiring any "restricted employee" of Pactiv. With respect to the hiring and solicitation of "restricted employees," the Agreement stated:

> Without prior written consent of Pactiv neither [Menasha] nor any of [Menasha's] Representatives who are aware of any of the Evaluation Material, other Non-Disclosable Information, or the Transaction, for a three year period from the date of this agreement, will directly or indirectly, (a) solicit the employment of any Restricted Emplyee (as defined below), (b) hire any Restricted Employee or (c) induce any Restricted Employee to terminate his or her employment by the Company. As used herein, the term "Restricted Employee" shall refer to (a) any employee of the Company with whom [Menasha] or any of [Menasha's] Representatives have had contact or who became known to [Menasha] or any of [Menasha's] Representatives in connection with[their] review consideration of the Transaction, as well as (b) any management-level employees of Pactiv or any of its present or future direct or indirect subsidiaries, divisions or operation unites whether or not such employee is a Restricted Employee.
> (Def.'s 56.1(a) Statement, ¶ 40.)

Menasha accepted and signed the Agreement. In May 2000, Pactiv provided Menasha with financial information relating to Glacier-Cor and representatives of Menasha toured the Glacier-Cor facility. That same month, Menasha decided not to purchase Glacier-Cor and informed Pactiv that

all the material Menasha had received in connection with its review of Glacier-Cor had been either returned or destroyed. In July 2002, prior to the expiration of the three year period, Menasha hired Baumgartner, who at the time was the regional sales manager for Pactiv's paper honeycomb business, to become the head of Menasha's new paper honeycomb business. Menasha had not had any contact with Baumgartner in connection with its review of Glacier-Cor in 2000.

As of June 2000, Pactiv had more than 100 subsidiaries and affiliates, which were located in twenty countries: the United States, Canada, Mexico, Japan, Peoples Republic of China, United Kingdom, France, Germany, Italy, Belgium, Denmark, Hungary, Ireland, Netherlands, Poland, Romania, Spain, Sweden, Egypt, and Chile. There is no evidence in the record of exactly how many employees Pactiv had in April 2000, and how many of those were considered "management-level" employees at that time. However, it is undisputed that Pactiv's EEO-1 forms for the payroll period covering September 30, 2002, states that Pactiv had 10,543 employees in the United States, and identified 854 of these individuals as "officials and managers."

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue,

3

however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986).

ANALYSIS

I. Hiring of Management-Level Employees

In count I, Pactiv alleges Menasha breached the Agreement when it hired Baumgartner in July 2002 because Baumgartner was a "management-level employee" as prohibited in the (b) definition of "restricted employee" of the Agreement. It is undisputed that Pactiv is not alleging, and has no factual basis for alleging, that Menasha has misused any confidential information it obtained in 2000 during its review of Glacier-Cor. Menasha now asserts that it is entitled to summary judgment in its favor as to count I of the amended complaint because the blanket ban on Menasha hiring or soliciting any management-level employees of Pactiv in the Agreement is void and unenforceable as a matter of law. Based upon the undisputed facts and circumstances in this case, this court agrees.

As a preliminary matter, this court finds that the "no-hire" restrictive covenant at issue here is subject to the Illinois law on the validity of restrictive covenants. Pactiv argues that the Illinois law governing restrictive covenants does not apply in this case because the covenant at issue here was entered into as part of a confidentiality agreement between Pactiv and Menasha, as opposed to a conventional non-compete covenant in an employment contract between an employer and its employee. The provision at issue in the confidentiality Agreement, however, and covenants not to compete between and employer and an employee, are both restraints on trade. Therefore, the public

4

policy implications of these restrictive covenants are the identical. While this court recognizes that the Agreement containing the restrictive covenant at issue was an arms-length transaction entered into by two sophisticated companies, it is nonetheless subject to the same scrutiny required of restrictive covenants under Illinois law. See Freund v. E.D. & F. Mann Int.'l Inc., 199 F.3d 382, 385 (7th Cir. 1999) (holding that under Illinois law, an employer can enforce a promise by another employer not to hire away certain employees, provided the contract does not unreasonably restrain competition between the two employers, and survives the "reasonableness" scrutiny of restrictive covenants); Szabo Food Svc. Inc. v. County of Cook, 160 Ill.App.3d 845, 848, 513 N.E.2d 875 (1st Dist. 1987) (finding that the employer to employer "no-hire" provision at issue was a restrictive covenant, and such covenants are not favored by Illinois courts because of their anti-competitive effect, and are thus strictly scrutinized). Additionally, this court notes that Menasha has not, by signing and entering into the Agreement, waived its right to contest the enforceability of the provision at issue. See O'Hara v. Ahlgren, Blumenfeld and Kempster, 127 Ill.2d 333, 348, 537 N.E.2d 730 (Ill. 1989) (party to a contract that is contrary to public policy is not precluded from raising its illegality as a defense).

The question of whether a restrictive covenant is enforceable is a question of law. See Woodfield Group Inc. v. DeLisle, 295 Ill.App.3d 935, 938, 693 N.E.2d 464 (1st Dist. 1998). Prior to analyzing the reasonableness of a covenant not to compete, this court must make two determinations: (1) the covenant must be ancillary to a valid contract, that is, it must be subordinate to the contract's main purpose; and (2) there must be adequate consideration to support the covenant. See Woodfield Group Inc., 295 Ill.App.3d at 938, 693 N.E.2d 464. Because Menasha does not dispute that these two elements have been satisfied for the "no-hire" provision at issue in its motion,

this court moves on to consider the reasonableness of the provision.

To determine whether a restrictive covenant is valid and enforceable, this court must determine whether the terms of the covenant are reasonable. See id. at 938, 693 N.E.2d 464. Factors considered by Illinois courts in deciding whether to enforce a covenant not to compete include the scope, duration, purpose, and business justification of the restraint. See Freund, 199 F.3d at 385. The restrictive covenant must be "reasonable in geographical and temporal scope and necessary to protect a legitimate business interest of the employer." Woodfield Group Inc., 295 Ill.App.3d at 938, 693 N.E.2d 464. This determination necessarily turns on the facts and circumstances of each case. See Lawrence and Allen, Inc. v. Cambridge Human Resource Group, Inc., 292 Ill.App.3d 131, 138, 685 N.E.2d 434 (2d Dist. 1997). A restrictive covenant's reasonableness is measured by its hardship to Menasha, its effect upon the general public, and the reasonableness of the time, territory, and activity restrictions. See id. Because such covenants operate at least as partial restraints of trade, courts scrutinize them carefully to ensure that their intended effect is not the prevention of competition per se. See Corroon & Black of Illinois, Inc. v. Magner, 145 Ill.App.3d 151, 162, 494 N.E.2d 785 (1 Dist. 1986). The basic test that Illinois courts apply is whether the covenant is reasonably necessary to protect the employer from improper or unfair competition, depending on the facts of each case. See id.

Here, applying the law in Illinois to the undisputed facts, this court finds that the provision in the Agreement at issue in count I is overly broad and unreasonable in its geographical limitations and scope as necessary to protect Pactiv's legitimate business interests. It is undisputed that Pactiv's purpose for drafting and requiring Menasha to enter into the Agreement was to protect Pactiv from misuse of any potential information disclosure or personnel access obtained during its review of

Glacier-Cor for possible purchase in April and May 2000. Pactiv also sought to prevent Menasha from drawing analogies to the operation of Pactiv's similar businesses, hiring employees who may have been able to shed light into the use of such information, hiring employees whose identity or positions could have been identified at least in part through the use of such information, hiring employees with whom Menasha could have interacted or of whom Menasha could have learned, at least in part, through such access to personnel. (Def.'s 56.1(a) Statement, ¶ 67.)

Menasha does not dispute that the portion of the Agreement which bans the use of any confidential information obtained from Pactiv when evaluating the Glacier-Cor transaction, including a ban on hiring individuals who became known to Menasha through its evaluation of the Glacier-Cor transaction is reasonable and protects Pactiv's legitimate interests as outlined above. However, it is the second portion of the Agreement, which is a blanket ban on the hiring of any management-level employees of Pactiv for three years which Pactiv asserts is overly broad and has no reasonable relationship to the Glacier-Cor transaction.

The blanket ban on the hiring of any Pactiv management-level employee contains no geographic limitation. The provision bans the hiring of any management-level employee of Pactiv of any of its present or future, direct or indirect subsidiaries, divisions, or operation units worldwide. In June 2000, Pactiv had more than 100 subsidiaries and affiliates located in twenty different countries around the world. While covenants not to solicit do not require a geographic limitation, the covenant still must be reasonably related to Pactiv's legitimate business interest. The only evidence Pactiv has presented that it was necessary to ban the hiring of all management-level employees at any of Pactiv's subsidiaries worldwide for three years, is the general argument that it was unknown at the time the Agreement was entered into how much information and employee-

7

access would be provided to Menasha during the Glacier-Cor review since that depended on what Menasha would later request and how far the transaction would progress.

While Pactiv may not have known at the time the Agreement was drafted specifically how much information or access would be provided to Menasha, the parties do not dispute that all the information and access provided, whatever it turned out to be, would be in relation only to Menasha's review of Glacier-Cor. The purpose of any ban on hiring would be to protect Pactiv from the misuse of any confidential information or access obtained by Menasha in connection with the Glacier-Cor review. Pactiv has presented no evidence of how the hiring ban on all management-level employees worldwide at over 100 direct or indirect subsidiaries, plus future subsidiaries, and divisions or operation units worldwide, is reasonably related to, or necessary to protect Pactiv's interest in connection with Menasha's Glacier-Cor review. At his deposition, the business manager at Pactiv could not think of any independent business reason why Pactiv would want to prevent Menasha from hiring Pactiv employees entirely outside of the Glacier-Cor operation, or from hiring Pactiv employees from subsidiaries in any foreign country where Pactiv has operations. (Def.'s 56.1(a) Statement, ¶ 73.) The Vice President of Finance for Protective Packaging and International for Pactiv, the individual who drafted the Agreement, stated that the Agreement's ban of the hiring of all management-level employees, regardless of whether they had any knowledge or embedded knowledge concerning Glacier-Cor, protected Pactiv's interest in that it allowed Pactiv to have "general solicitation protection . . . general enough that the policing of the form of no-hire provision is much easier." (Def.'s 56.1(a) Statement, ¶ 74.) Unfortunately for Pactiv, under Illinois law, "activity restrictions, like restrictions on competing or soliciting, should be narrowly tailored to protect only against activities that threaten the employer's interest," Lawrence and Allen, Inc., 292

Ill.App.3d at 140, 685 N.E.2d 434; see also Dryvit System, inc. v. Rushing, 132 Ill.App.3d 9, 12, 477 N.E.2d 35 (1985) (restrictive covenant is reasonable if not greater than is necessary to protect the employer), even when the restrictive covenant is only a part of a broader confidentiality agreement between two employers.

This court finds that based on the undisputed facts, the terms contained in the restrictive covenant at issue is unreasonable under Illinois law. Pactiv has not demonstrated that its provision banning worldwide hiring of any Pactiv management-level employees is narrowly-tailored and necessary to protect Pactiv's interests in connection with Menasha's review of one Pactiv subsidiary, Glacier-Cor. While Pactiv may have a legitimate protectible interest in prohibiting Menasha's misuse of confidential information or access obtained during its review of Glacier-Cor, this court holds that Pactiv has not established a legitimate business in a three-year ban on Menasha against solicitation or hiring of any management-level Pactiv employee, regardless of any knowledge or embedded knowledge that that employee may have, or may obtain, in connection with Glacier-Cor. Accordingly, this court finds that the restrictive covenant of the Agreement which Pactiv seeks to enforce in count I of its amended complaint is not reasonable and necessary to protect a legitimate business interest of Pactiv, and therefore is unenforceable under Illinois law.

II. Discretionary Modification

Pactiv requested in its response to Menasha's motion, that if this court were to find the no-hire provision to be overly broad and unenforceable as written, this court utilize its equitable power to modify the restriction appropriately to make it reasonable under the law. Under Illinois law, a court, at its discretion, may modify or "blue-pencil" an unreasonable agreement in order to make it comport with the law, or sever unenforceable provisions from a contract. See Arpac Corp v. Murray,

226 Ill.App.3d 65, 80, 589 N.E.2d 640 (1st Dist. 1992); Corroon & Black of Illinois, Inc. v. Magner, 145 Ill.App.3d 151,166, 494 N.E.2d 785 (1st Dist. 1986). The fairness of the restraint initially imposed is a relevant consideration for the court in deciding whether to modify the restraining provision. See Arpac, 226 Ill.App.3d at 79-80, 589 N.E.2d 640. A court should refuse to modify an unreasonable restrictive covenant "where the *degree* of unreasonableness renders it unfair." Eichmann v. National Hospital and Healthcare Svcs. Inc., 308 Ill.App.3d 337, 347-48, 719 N.E.2d 1141 (1st Dist. 1999) ("Due to the significant deficiencies of the restrictive covenants here, drastic modifications rather than minor ones, would be necessary and that would be tantamount to fashioning a new agreement."). In determining whether to modify the Agreement or to sever certain provisions while enforcing others, the trial court should also consider the extent to which the provisions operate independently of each other. See Abbott-Interfast Corp. v. Harkabus, 250 Ill.App.3d 13, 21, 619 N.E.2d 1337 (2d Dist. 1993).

In this case, Pactiv requests that this court modify the "no-hire" provision at issue to include not only the management-level employees of Glacier-Cor, but also the management-level employees of Hexacomb, another subsidiary of Pactiv and the subsidiary where Baumgartner was the Regional Sales Manager in July 2002 before he left Pactiv. Pactiv argues that the Glacier-Cor and Hexacomb subsidiaries were so connected that it was reasonably foreseeable that information regarding Glacier-Cor would have contained information about Hexacomb at the time the Agreement was drafted. Although this court does not find Pactiv's requested modification to be "drastic" or "tantamount to fashioning a new agreement" as was the circumstance in the Eichmann case, this court declines to exercise its discretion to "blue-pencil" the no-hire provision at issue. While the record indicates that Glacier-Cor and Hexacomb were both in the business of paper honeycomb production, Pactiv and

Menasha dispute the exact extent of the relationship between Hexacomb and Glacier-Cor. The parties dispute whether the Glacier-Cor facility was a part of a Hexacomb facility, or whether the Glacier-Cor business was embedded organizationally within Hexacomb. The modification Pactiv requests would require a determination of this disputed fact, on which this court believes it has insufficient information and declines to do. See Arpac, 226 Ill.App.3d at 80, 589 N.E.2d 640 (noting, in approving the circuit court's modification, that "the circuit court modified only *slightly* the covenant . . . .") (emphasis added).

Moreover, the Agreement contained a severability provision which states that if any provision of the Agreement is invalidated, the invalid provision should be disregarded and the remaining portions of the contract enforced. (Pl.'s 56.1(b) Additional Facts, ¶ 19.) Here, the "no-hire" provision at issue in the Agreement, which is the section (b) definition of "Restricted Employee" can be severed without affecting the remaining portions fo the Agreement as a whole, and certainly does not render the entire Agreement void. See Abbott-Interfast, 250 Ill.App.3d at 21, 619 N.E.2d 1337. Additionally, this court notes that the remaining enforceable portions of the Agreement, specifically the provisions prohibiting Menasha from misusing any confidential information received from Pactiv, and from hiring anyone, management or non-management, who came to Menasha's attention as part of its review of Glacier-Cor, provide Pactiv with the legitimate business protections sought in connection with Menasha's Glacier-Cor review.

Finally, in determining whether to modify a restrictive covenant, a court should consider, importantly, that the "modification could have the potential effect of discouraging the narrow and precise draftsmanship which should be reflected in written agreements." Eichmann, 308 Ill.App.3d at 348, 719 N.E.2d 1141 (citing Lee/O'Keefe Ins. Agency, Inc. v. Ferega, 163 Ill.App.3d 997, 1007,

516 N.E.2d 1313 (4th Dist. 1987)); see also Texlon Corp. v. Hoffman, 720 F.Supp. 657, 666 (N.D.Ill. 1989) (declined to "blue-pencil" restrictive covenant because it was overly broad as written and employers must draft covenants narrowly tailored to serve their individual needs); Roberge v. Qualitek International Inc., 2002 WL 109360 at *7 (N.D.Ill. January 28, 2002) (declining to exercise discretion to "blue-pencil" the restrictive covenant because it was unfair as executed and because declining to do so would encourage employers to write contracts that are more narrowly tailored); Trailer Leasing Co. v. Associates Commercial Corp., 1996 WL 392135 at * 4 (N.D.Ill. July 10, 1996) (same). With this consideration in mind, in addition to the reasons discussed above, this court declines to exercise its option of "blue-penciling" the restrictive covenant in the Agreement at issue in count I of Pactiv's amended complaint.

## CONCLUSION

For all the foregoing reasons, Menasha's motion for summary judgment as to count I of Pactiv's amended complaint is granted. As to the remaining counts, previously set dates remain. This court urges the parties to discuss settlement of this case.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: May 9, 2003

12